Filed 4/13/04 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2004 ND 81

Barry Caesar Garcia, Petitioner and Appellant

v.

State of North Dakota, Respondent and Appellee

Nos. 20030162 & 20030307

Appeals from the District Court of Cass County, East Central Judicial District, the Honorable Norman J. Backes, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Richard J. Henderson, Nilles, Hansen & Davies, Ltd., P.O. Box 677, Moorhead, MN 56561-0677, for petitioner and appellant.

Birch Peterson Burdick, State’s Attorney, P.O. Box 2806, Fargo, ND 58108-

2806, for respondent and appellee.

Garcia v. State

Nos. 20030162 & 20030307

VandeWalle, Chief Justice.

[¶1] Barry Caesar Garcia appealed from judgments denying his applications for post-conviction relief.  We affirm.

I

[¶2] In West Fargo on November 15, 1995, Cherryl Tendeland was sitting in the front passenger seat of a car when she was shot and killed by a young man who fired a sawed-off shotgun through the front passenger window of the vehicle.  Her husband, Pat Tendeland, was driving the vehicle, and Connie Guler, a friend, was in the backseat.  Pat Tendeland was wounded in the shooting.  The State arrested Garcia, then sixteen years old, and three other young men for the crime.  Garcia was transferred from juvenile court to the district court and convicted of murder and aggravated assault.  He was sentenced to life in prison without parole for the murder conviction and five years imprisonment for the aggravated assault conviction.  On appeal, we affirmed the trial court’s decision.  
See
 
State v. Garcia
, 1997 ND 60, 561 N.W.2d 599.  

[¶3] In March 1998, Garcia filed an application for post-conviction relief, contending he received ineffective assistance from his trial counsel during various stages of the trial.  Specifically, Garcia contended trial counsel was ineffective during voir dire; ineffective for failing to sequester Mr. Tendeland, a prosecution witness, during the trial; ineffective for failing to adequately respond to alleged juror misconduct; and ineffective for failing to investigate potential witnesses and present mitigating evidence during sentencing.  The trial court denied Garcia’s claims.  Garcia appealed, and we temporarily remanded the case to allow the trial court to act on Garcia’s second application for post-conviction relief filed in May 2003. 

[¶4] In Garcia’s second application for post-conviction relief, he contended trial counsel was ineffective during cross-examination of Mr. Tendeland.  The trial court denied Garcia’s second application, finding it was a “misuse of process and/or res judicata” because it should have been raised in Garcia’s first application.  Garcia appealed, and we consolidated the two appeals.  On appeal, Garcia claims the trial court erred in denying his applications for post-conviction relief and seeks reversals of the judgments.  He requests a new trial or, in the alternative, a new sentencing hearing.

II

[¶5] The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I,   12 of the North Dakota Constitution guarantee a criminal defendant effective assistance of counsel.  
DeCoteau v. State
, 1998 ND 199, ¶ 6, 586 N.W.2d 156.  To succeed on a claim for ineffective assistance of counsel, a petitioner must prove counsel’s performance fell below an objective standard of reasonableness and the deficient performance prejudiced him.  
Strickland v. Washington
, 466 U.S. 668, 687 (1984); 
State v. Robertson
, 502 N.W.2d 249, 251 (N.D. 1993).  “Effectiveness of counsel is measured by an ‘objective standard of reasonableness’ considering ‘prevailing professional norms.’”  
DeCoteau v. State
, 2000 ND 44, ¶ 8, 608 N.W.2d 240 (quoting 
Strickland
, at 688).  Trial counsel’s conduct is presumed to be reasonable and courts consciously attempt to limit the distorting effect of hindsight.  
Id.
 (quoting 
Lange v. State
, 522 N.W.2d 179, 181 (N.D. 1994)).

The prejudice element requires a defendant to “establish a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.”  
Syvertson v. State
, 2000 ND 185, ¶ 22, 620 N.W.2d 362.  “A criminal defendant has the ‘heavy,’ ‘demanding’ burden of proving counsel’s assistance was ineffective,”  
Mertz v. State
, 535 N.W.2d 834, 836 (N.D. 1995), and a defendant claiming ineffective assistance of counsel “must specify how and where trial counsel was incompetent and the probable different result.”  
State v. Palmer
, 2002 ND 5, ¶ 11, 638 N.W.2d 18.

McMorrow v. State
, 2003 ND 134, ¶ 10, 667 N.W.2d 577.  “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”  
Strickland
, at 694.  “If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.”  
Id.
 at 697.  

[¶6] Post-conviction relief proceedings are civil in nature and are governed by the North Dakota Rules of Civil Procedure.  
Varnson v. Satran
, 368 N.W.2d 533, 536 (N.D. 1985).  “The issue of ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable by this court.  However, a trial court’s findings of fact in actions for post-conviction relief will not be disturbed unless clearly erroneous, pursuant to N.D.R.Civ.P. 52(a).”  
Breding v. State
, 1998 ND 170, ¶ 4, 584 N.W.2d 493 (citing 
Falcon v. State
, 1997 ND 200, ¶ 21, 570 N.W.2d 719, and 
Frey v. State
, 509 N.W.2d 261, 263 (N.D. 1993)).

A.

[¶7] Garcia argues trial counsel provided ineffective assistance during voir dire.  Prior to trial, Garcia made a motion to change the venue of the trial, claiming a fair trial before an impartial jury was not possible in Fargo because of pretrial publicity and racial bias against Hispanic people.  The trial court took the motion under advisement, stating it would wait until voir dire was completed before deciding whether an impartial jury could be selected.  
See
   
State v. Ellis
, 2000 ND 177, ¶ 10, 617 N.W.2d 472 (quoting 
State v. Norman
, 507 N.W.2d 522, 526 (N.D. 1993)).  During voir dire, Garcia claims trial counsel asked perfunctory questions, failed to ask follow-up questions, and tried to rehabilitate jurors who expressed bias or preconceived ideas about Garcia’s guilt.  At the evidentiary hearing, Garcia presented testimony from Dr. Ann Burnett regarding trial counsel’s performance during voir dire.  She testified that some members of the venire panel were not questioned regarding their feelings about Garcia’s guilt, trial counsel failed to strike a juror who indicated she associated Hispanic individuals with juvenile gangs, and failed to make sure a potential juror who came to the case with preconceived notions of Garcia’s guilt would not be biased.  Garcia argues the only way to rectify the inadequate voir dire is to grant him a new trial because prejudice can be inferred.  The trial court found trial counsel’s method of conducting voir dire did not fall below an objective standard of reasonableness. 

[¶8] Counsel’s actions during voir dire are considered matters of trial strategy.  
Miller v. Francis
, 269 F.3d 609, 615 (6th Cir. 2001).  “An unsuccessful trial strategy does not make defense counsel’s assistance defective, and we will not second-guess counsel’s defense strategy through the distorting effects of hindsight.”  
Breding
, 1998 ND 170, ¶ 9, 584 N.W.2d 493.  After reviewing the record, we are convinced trial counsel’s representation during voir dire did not fall below the objectively reasonable standard established by 
Strickland
.  Voir dire was conducted through the use of jury questionnaires and questioning by the court and counsel.  It is reasonable to conclude trial counsel reviewed and evaluated the questionnaires because, prior to conducting voir dire of the venire panel, he sought and received the dismissal of three potential jurors based upon their answers in the questionnaires.  Trial counsel testified he used the questionnaires and the questionnaires “went into ethnic biases and prejudices, some questions about gang activity, that type of thing.”  Although the questionnaires were not used by the parties during the post-conviction relief proceedings, the questionnaires of the potential jurors dismissed before voir dire of the whole panel are a part of the entire record for review on appeal.  The questionnaires contained inquiries regarding whether the potential jurors believed race affects the likelihood that a person will commit crimes and addressed whether the potential jurors had heard or read about crimes involving criminal street gang activity in the Fargo area.   

[¶9] Trial counsel also filed an affidavit, in which he indicated that he uses jury selection as an “education process.”  He testified that he approaches voir dire in highly publicized cases such as Garcia’s to “try and get through to [the jurors] that they have to base their ultimate deliberation on what they heard from the witness stand, not what they read in the newspapers before court.”  Regarding biases and prejudices in cases involving minorities, he stated, “If [potential jurors] have those prejudices or biases, you have to try and determine whether or not they would be able to put them aside and decide the case on a fair and impartial basis.” 

[¶10] We agree with the Sixth Circuit that “criminal defense lawyers should be given broad discretion in making decisions during voir dire.  Few decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors.”  
Miller
, 269 F.3d at 620.  Trial counsel in this case did not ask all prospective jurors the same questions, but each member of the final jury panel essentially indicated they could be fair and impartial.  We agree that

[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror’s impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Hughes v. United States
, 258 F.3d 453, 459 (6th Cir. 2001) (quoting 
Irvin v. Dowd
, 366 U.S. 717, 723 (1961)).  To hold that trial counsel’s assistance fell below an objective standard of reasonableness in this case would impose a similarly impossible standard upon criminal defense lawyers. 

[¶11] Garcia’s trial counsel did not simply “go through the motions” in voir dire.  He sought a change of venue, was successful in having potential jurors dismissed before voir dire based on their responses to the questionnaires, challenged jurors for cause during voir dire, and exercised five peremptory challenges.  These strategic decisions were made based on his goal to educate the jury and choose a fair, impartial jury which would not be influenced by the publicity surrounding the case or by racial prejudice.  This is not an unreasonable goal in choosing a jury, and trial counsel’s strategy in reaching that goal was not objectively unreasonable.  We conclude the district court did not err as a matter of law and it was not clearly erroneous for it to find trial counsel’s representation did not fall below an objective standard of reasonableness.

 

B.

[¶12] Garcia contends trial counsel was ineffective because he failed to sequester Pat Tendeland, a prosecution witness, during the trial.  In a statement to police prior to trial, Mr. Tendeland was unable to remember the color of the assailant’s jacket.  But, after attending the trial and observing other witnesses’ testimony, he testified the assailant had been wearing a green jacket.  Garcia claims the prejudice caused by Mr. Tendeland’s testimony can only be cured by a new trial.  The trial court found there was no prejudice to Garcia by failing to sequester Mr. Tendeland because his inconsistent testimony likely harmed his credibility in front of the jury and there was plenty of other evidence upon which to convict Garcia. 

[¶13] After reviewing the record of the criminal trial, we agree with the trial court’s finding that there was ample evidence presented at trial concerning Garcia’s guilt.  Further, trial counsel stated in his affidavit that he did not object to Mr. Tendeland attending the trial because his testimony was “‘locked’ in,” and trial counsel pointed out on cross-examination that Mr. Tendeland previously stated the assailant had been wearing a dark-colored jacket.  To claim Garcia was somehow prejudiced by witness testimony that was inconsistent with a prior statement made to the police is highly speculative.  “Counsel’s decision to have witnesses sequestered falls in the area of trial strategy,”  
Fernandez v. United States
, 553 F. Supp. 260, 266 (S.D.N.Y. 1982), and we conclude Garcia’s trial counsel was not ineffective for failing to sequester Mr. Tendeland during the criminal trial.  
See
 
State v. Tiessen
, 354 N.W.2d 473, 477 (Ct. App. Minn. 1984) (“There is no merit to the suggestion of ineffective counsel simply because counsel failed to request sequestration of witnesses”).

C.

[¶14] Garcia contends trial counsel was informed that at least one juror was seen talking with non-jurors during breaks in the trial and that there was no objectively reasonable basis not to bring this to the trial court’s attention.  He argues prejudice may be presumed when counsel fails to take appropriate action in response to juror misconduct, or that a new trial is required because he was deprived of an opportunity to show actual prejudice.  In its order dated July 31, 2000, the trial court found Garcia’s claim of ineffective assistance of counsel on this issue to be without merit based on the affidavits of trial counsel and Jill Johnson-Danielson.    

[¶15] Garcia relies on 
Remmer v. United States
, 347 U.S. 227 (1954), for the proposition that prejudice may be presumed when counsel fails to take appropriate action in response to juror misconduct.  In 
Remmer
, the United States Supreme Court stated, “In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial 
about the matter pending before the jury
 is, for obvious reasons, deemed presumptively prejudicial.”  347 U.S. at 229 (emphasis added) (evaluating a remark made to a juror that he could profit by returning a verdict in favor of the petitioner).  The evidence presented did not indicate any communication between the jury and non-jurors regarding Garcia’s trial.  Without an allegation or any proof that the communication was related to the trial or somehow prejudiced Garcia, the district court did not err in dismissing Garcia’s claim on this issue.

D.

[¶16] Garcia claims his trial counsel was ineffective during the sentencing phase of trial.  The 
Strickland
 test for ineffective assistance of counsel applies during capital sentencing proceedings because they are sufficiently similar to a trial.  466 U.S. at 686.  The 
Strickland
 Court declined to apply its standard to ordinary sentencing proceedings “which may involve informal proceedings and standardless discretion in the sentencer.”  
Id.
  However, the standard has been applied in cases involving claims of ineffective assistance of counsel that did not involve capital offenses.  
E.g.
 
Lindsey v. United States
, 310 F.3d 606, 607 (8th Cir. 2002) (applying the 
Strickland
 test to petitioner’s claim of ineffective assistance of counsel during sentencing on drug-related charges).  “[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.”  
Strickland
, 466 U.S. at 691.  

[¶17] At sentencing, the trial court evaluated the sentencing factors set forth in section 12.1-32-04, N.D.C.C.  That section provides the following factors shall be accorded weight in sentencing an individual to imprisonment:

1. The defendant’s criminal conduct neither caused nor threatened serious harm to another person or his property.

2. The defendant did not plan or expect that his criminal conduct would cause or threaten serious harm to another person or his property.

3. The defendant acted under strong provocation.

4. There were substantial grounds which, though insufficient to establish a legal defense, tend to excuse or justify the defendant’s conduct.

5. The victim of the defendant’s conduct induced or facilitated its commission.

6. The defendant has made or will make restitution or reparation to the victim of his conduct for the damage or injury which was sustained.

7. The defendant has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial period of time before the commission of the present offense.

8. The defendant’s conduct was the result of circumstances unlikely to recur.

9. The character, history, and attitudes of the defendant indicate that he is unlikely to commit another crime.

10. The defendant is particularly likely to respond affirmatively to probationary treatment.

11. The imprisonment of the defendant would entail undue hardship to himself or his dependents.

12. The defendant is elderly or in poor health.

13. The defendant did not abuse a public position of responsibility or trust.

14. The defendant cooperated with law enforcement authorities by bringing other offenders to justice, or otherwise cooperated.

N.D.C.C.   12.1-32-04.  The trial judge also considered other factors, stating,

There are a couple of other factors that the Court deems to be significant.  The first is Mr. Garcia’s youth.  All human beings possess certain inalienable attributes.  And one of these is the possibility of redemption or rehabilitation.  It is possible for a person to undergo, as a result of a life-changing circumstance, youth, spiritual, and personal change.  These types of changes are more likely to occur in young people than they are in older people because, in young people, their personalities are still in formation.

However, in order for this to be accomplished, the person must be willing to admit the wrongfulness of their conduct, their powerlessness to change what has already happened, and to express a real willingness to make amends to the fullest extent possible.

In this case, Mr. Garcia has not demonstrated that he understands the seriousness of his crime or that he has changed as a result of his experiences. 

. . . .

My personal philosophy is that particularly young people are capable of changing, they are capable of reforming their lives, that they are capable of starting anew.

I came to this case, looking for some reason, some justification, some excuse, to hand down a sentence less than the maximum.  Mr. Garcia has given me no alternative, he has given me no opportunity.

  

[¶18] In Garcia’s appeal from his criminal convictions, he asserted his due process rights were violated and he received a cruel and unusual sentence because the court did not inquire into mitigating factors not articulated by trial counsel or the presentence investigation report.  
Garcia
, 1997 ND 60, ¶¶ 54-55, 561 N.W.2d 599.  In holding that the trial court did not have a constitutional duty to affirmatively seek out mitigating circumstances, we observed that “Garcia was given an opportunity to offer evidence of mitigating circumstances during the presentence investigation and during the sentencing hearing,” but neither he nor his lawyer offered any.  
Id.
 at ¶ 58.  Garcia now asserts his trial counsel was ineffective for failing to interview potential character witnesses and present mitigating evidence relating to Garcia’s troubled childhood.  

[¶19] Garcia relies on 
Wiggins v. Smith
, 539 U.S. 510, 123 S. Ct. 2527 (2003), to support his claim that counsel was ineffective during sentencing.  In 
Wiggins
, the United States Supreme Court held that Wiggins’ counsel were ineffective in their investigation of mitigating evidence in Wiggins’ life history.  123 S. Ct. at 2541-42.  The Court concluded the mitigating evidence already known to Wiggins’ counsel would have lead a reasonable attorney to investigate further and present the powerful mitigating evidence that should have been discovered, and had this evidence been presented to the jury, there was a reasonable probability Wiggins would have received a different sentence.  
Id.
 at 2538, 2542-43.  
Wiggins
 is distinguishable from Garcia’s case in two material aspects.  First, 
Wiggins
 involved a capital sentencing proceeding in front of a jury.  
Id.
 at 2532.  In Garcia’s case, sentencing was held before a judge who was presented with a presentence investigation report, which included Garcia’s family history and other relevant information.  Second, the petitioner in 
Wiggins
 provided the following extensive evidence regarding information that was not discovered by his trial counsel:

According to [a licensed social worker’s] report, [Wiggins’] mother, a chronic alcoholic, frequently left Wiggins and his siblings home alone for days, forcing them to beg for food and to eat paint chips and garbage.  Mrs. Wiggins’ abusive behavior included beating the children for breaking into the kitchen, which she often kept locked.  She had sex with men while her children slept in the same bed and, on one occasion, forced [Wiggins’] hand against a hot stove burner–an incident that led to [his] hospitalization.  At the age of six, the State placed Wiggins in foster care.  [His] first and second foster mothers abused him physically, and, as [Wiggins] explained to [the social worker], the father in his second foster home repeatedly molested and raped him.  At age 16, [Wiggins] ran away from his foster home and began living on the streets.  He returned intermittently to additional foster homes, including one in which the foster mother’s sons allegedly gang-raped him on more than one occasion.  After leaving the foster care system, Wiggins entered a Job Corps program and was allegedly sexually abused by his supervisor.

Id.
 at 2533.  Garcia did not provide such sufficient evidence in support of his application for post-conviction relief.

[¶20] Instead, the most relevant portions of Garcia’s life history, which he now asserts as mitigating evidence, were presented to the trial court in the presentence investigation report.  Garcia claims at least eight witnesses offered to give favorable testimony about his character and background at the sentencing hearing.  The potential witnesses’ testimony at the post-conviction hearing and their respective affidavits indicate that they would have generally testified that Garcia had a troubled childhood, his mother had been murdered, his father was in prison, he was a good friend and family member, and that he could be repentant and reform himself.  The evidence regarding his childhood and family history was presented to the trial court in the presentence investigation report, and a review of the sentencing transcript does not indicate Garcia was prejudiced by the absence of the remaining purported testimony because the trial court was looking for some evidence that Garcia had accepted responsibility for his crime or that he had changed as a result of his experiences.  Given the unprovoked, brutal nature of the crimes and Garcia’s history of violent crimes and probation violations evidenced in the presentence investigation report, there is no reasonable probability that the purported witness testimony would have changed the sentence imposed.  
See
 
Strickland
,466 U.S. at 700 (stating “at most this evidence shows that numerous people who knew respondent thought he was generally a good person”).  Assuming 
Strickland
 applies to the sentencing phase of Garcia’s trial, we conclude the trial court did not err in finding Garcia was not prejudiced by trial counsel’s representation during sentencing.

E.

[¶21] In his second application for post-conviction relief, Garcia contended trial counsel was ineffective in cross-examining Mr. Tendeland.  The trial court denied the second application for post-conviction relief because it found it was a variation of Garcia’s ineffective assistance of counsel claim raised in his first application, and there did not appear to be any excuse for failing to raise the particular issue in the first petition.

[¶22] Section 29-32.1-12, N.D.C.C., provides:

1. An application for postconviction relief may be denied on the ground that the same claim or claims were fully and finally determined in a previous proceeding.

2. A court may deny [postconviction] relief on the ground of misuse of process.  Process is misused when the applicant:

a. Presents a claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding; or

b. Files multiple applications containing a claim so lacking in factual support or legal basis as to be frivolous.

3. Res judicata and misuse of process are affirmative defenses to be pleaded by the state.  The burden of proof is also upon the state, but, as to any ground for relief which, by statute or rule of court, must be presented as a defense or objection at a specified stage of a criminal prosecution, the applicant shall show good cause for noncompliance with the statute or rule.

“A defendant ‘. . . misuse[s] the post-conviction process’ by initiating a subsequent application raising issues that could have been raised in an earlier proceeding.”  
Silvesan v. State
, 1999 ND 62, ¶ 10, 591 N.W.2d 131(quoting 
State v. Johnson
, 1997 ND 235, ¶ 12, 571 N.W.2d 372); 
see also
 
Murchison v. State
, 2003 ND 38, ¶ 13, 658 N.W.2d 320 (holding that defendant could not raise ineffective assistance of counsel in a subsequent application for post-conviction relief because he inexcusably failed to raise the issue in his initial post-conviction application).  A defendant must show an excuse, such as newly discovered evidence, which could not have been raised in the first application for post-conviction relief.  
See
 
Berlin v. State
, 2000 ND 206, ¶ 15, 619 N.W.2d 623.  Likewise, a defendant is not entitled to repetitious post-

conviction relief when the contentions raised on appeal are simply variations of previous arguments.  
State v. Johnson
, 1997 ND 235, ¶ 13, 571 N.W.2d 372.  We have not found, and Garcia has not specified, any reason why this claim could not have been raised in his first application for post-conviction relief, and we conclude the trial court did not err in denying Garcia’s second application for post-conviction relief.

F.

[¶23] Garcia argues that even if trial counsel’s individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet 
Strickland’s
 test.  
See
 
Williams v. Washington
, 59 F.3d 673, 682 (7th Cir. 1995) (“In making this showing, a petitioner may demonstrate that the cumulative effect of counsel’s individual acts or omissions was substantial enough to meet 
Strickland’s
 test”); 
but see
 
Scott v. Jones
, 915 F.2d 1188, 1191 (8th Cir. 1990) (“cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own”).  If we were to accept Garcia’s position that ineffectiveness of counsel may be proven cumulatively, our confidence in trial counsel’s overall performance and in the result of the trial has nevertheless not been undermined.  

[¶24] For the reasons stated, the judgments of the district court are affirmed.

[¶25] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom