2004 ND 213

**John Willard GREYWIND, Petitioner and Appellant**

**v.**

**STATE of North Dakota, Respondent and Appellee.**

No. 20040080.

Supreme Court of North Dakota.

Nov. 19, 2004.

Jonathon Willard Greywind, pro se, Bismarck, N.D., petitioner and appellant.

Birch Peterson Burdick, State's Attorney, Fargo, N.D., for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Jonathon Willard Greywind appealed from a judgment denying his application for post-conviction relief. We conclude the district court did not err in ruling Greywind's guilty pleas were voluntary, he did not receive ineffective assistance of counsel, and his newly discovered evidence does not provide grounds for post-conviction relief. We affirm.

I

[¶ 2] Greywind was involved in two criminal cases which underlie this appeal. In the first case, Greywind was charged with burglary, terrorizing and three counts of theft of property. In the second case, Greywind was charged with conspiracy to commit murder and accomplice to tampering with a witness who was going to testify against him in the first case. It was alleged that in October 1999, Greywind arranged to have Ngoc Huynh and Ben Berns kill the witness in exchange for $2,000 and bus tickets to California. Greywind allegedly drove Huynh and Berns to the vicinity of the witness's home in Fargo and Huynh fired a number of shots from a handgun into the home. The witness was unharmed and gave physical descriptions of Huynh and Berns to police. Police arrested Huynh and Berns in Moorhead, Minnesota, while they were in the company of Greywind. Huynh and Berns both gave videotaped statements to law enforcement officers in which they provided details of how Greywind arranged to have them kill the witness.

[¶ 3] Greywind was represented by different attorneys in the initial theft case and in the subsequent conspiracy case. On February 17, 2000, Greywind and his attorneys signed a N.D.R.Crim.P. 11 plea agreement in which Greywind acknowledged his guilt in both the theft case and the conspiracy case. On February 18, 2000, Greywind appeared before the district court and was advised of his constitutional rights. Greywind acknowledged that he understood his rights and that he understood the contents of the plea agreement. The State recited a factual basis for the offenses which was acknowledged by Greywind and his attorneys. The district court sentenced Greywind to 20 years imprisonment on the charge of conspiracy to commit murder. The court sentenced Greywind to shorter terms of imprisonment on the other charges, and those sentences were ordered to run concurrently with the 20-year sentence. The district court denied Greywind's subsequent motion for reduction of sentence under N.D.R.Crim.P. 35(b).

[¶ 4] In August 2003, Greywind filed an application for post-conviction relief. Greywind argued his guilty plea was involuntary because his attorneys coerced him into pleading guilty and because he has a limited education and was unable to understand the terms of the plea agreement. Greywind claimed he was denied effective assistance of counsel because neither of his attorneys adequately investigated the case. Greywind also argued he had newly discovered evidence in the form of affidavits from Huynh and Berns recanting their prior statements to police implicating Greywind in the conspiracy and stating that the prior statements were coerced, untrue, and were made to help them receive lighter sentences. The district court held an evidentiary hearing in which Greywind, his former attorneys, Huynh, Berns, and law enforcement officers investigating the crimes testified. The court denied the application, ruling Greywind "failed to prove that he received ineffective assistance of counsel in either criminal" case, "or that his pleas entered in those cases were anything other than voluntary, or that he has newly discovered evidence that would provide grounds for post conviction relief." Greywind appealed.

## II

[¶ 5] Post-conviction relief proceedings are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Garcia v. State*, 2004 ND 81, ¶ 6, 678 N.W.2d 568. In post-conviction relief proceedings, a district court's findings of fact will not be disturbed unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Cue v. State*, 2003 ND 97, ¶ 10, 663 N.W.2d 637. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by the evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and

firm conviction that a mistake has been made. *DeCoteau v. State*, 2000 ND 44, ¶ 10, 608 N.W.2d 240. Questions of law are fully reviewable on appeal of a post-conviction proceeding. *Peltier v. State*, 2003 ND 27, ¶ 6, 657 N.W.2d 238.

### A

[¶ 6] Greywind argues his guilty plea was involuntary because his counsel coerced him into pleading guilty and his limited fourth-grade education precluded him from understanding the terms of the plea agreement.

[¶ 7] When a defendant applies for post-conviction relief seeking to withdraw a guilty plea, we generally treat the application as one made under N.D.R.Crim.P. 32(d). *Bay v. State*, 2003 ND 183, ¶ 7, 672 N.W.2d 270. Withdrawal of a guilty plea is allowed when necessary to correct a manifest injustice, and whether there has been a manifest injustice supporting withdrawal of the plea lies within the district court's discretion. *State v. Zeno*, 490 N.W.2d 711, 713 (N.D.1992). In determining whether the district court abused its discretion, we may be required to review the court's preliminary findings of fact, which will not be disturbed unless they are clearly erroneous. *Houle v. State*, 482 N.W.2d 24, 25–26 (N.D.1992).

[¶ 8] Due process is satisfied when the whole record clearly reflects the defendant's knowledge of the rights being waived. *State v. Olson*, 544 N.W.2d 144, 147 (N.D.1996). A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea, and its voluntariness turns on whether the advice was within the range of competence demanded of attorneys in criminal cases. *Damron v. State*, 2003 ND 102, ¶ 9, 663 N.W.2d 650. A guilty plea is valid if it represents a volun-

tary and intelligent choice among the alternative courses of action open to the defendant. *Houle*, 482 N.W.2d at 26.

[¶ 9] The record reflects that the district court questioned Greywind at length at the time of his pleas, advised him of his rights and the rights he was waiving by pleading guilty, reviewed the plea agreement with him, asked whether he agreed with the factual basis given by the State for the pleas, and gave him an opportunity to address the court. Greywind did not claim any lack of understanding. Rather, Greywind told the court his attorneys explained the provisions of the plea agreement to him and that he understood those provisions. Greywind told the court he was "very sorry for what I did ... I was intoxicated at the time ... [a]nd I made a stupid choice." The court found at the time of sentencing that the pleas were freely and voluntarily made and there was a factual basis for each of the pleas.

[¶ 10] Although Greywind claims he did not understand the terms of the plea agreement because of his limited education, the record shows that Greywind had substantial experience with the criminal justice system. Between 1994 and 1998, Greywind was convicted of giving false information to law enforcement officers, simple assault, possession of drug paraphernalia and marijuana, and theft of property, for which he was sentenced to the State Penitentiary. Greywind was originally scheduled to change his plea to guilty in December 1999, but changed his mind and refused to do so. Greywind again refused to change his plea at a January 2000 hearing scheduled for that purpose. Greywind's attorneys informed him of the possibility of life in prison and consecutive sentences if he had gone to trial and been found guilty, and Greywind pled guilty in February 2000. Informing a defendant of the prospect of receiving a harsher sentence if he were to go to trial is not coercion sufficient to render a guilty plea involuntary. *See State v. Hobus*, 535 N.W.2d 728, 729 (N.D.1995). In his May 2000 motion for reduction of sentence under N.D.R.Crim.P. 35(b), Greywind acknowledged that he, "of his own freewill and accord pleaded guilty" in the cases and that he "excepted [sic] responsibility for his actions and realizes that my behavior was nothing to be proud of."

[¶ 11] The district court found "[t]here is nothing in the record to indicate that [Greywind] did anything other than enter voluntary pleas," and we agree. We conclude the district court did not abuse its discretion in refusing to allow Greywind to withdraw his guilty plea.

B

[¶ 12] Greywind argues he received ineffective assistance of counsel because his attorneys failed to adequately investigate the case. In particular, Greywind claims his attorneys should have interviewed Huynh and Berns before he pled guilty.

[¶ 13] Ineffective assistance of counsel is one ground for relief from a criminal conviction under N.D.C.C. § 29–32.1–01(1)(a). To succeed on a claim of ineffective assistance of counsel, the defendant must prove counsel's performance fell below an objective standard of reasonableness and the deficient performance prejudiced him. *Garcia*, 2004 ND 81, ¶ 5, 678 N.W.2d 568. To demonstrate prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and the defendant must specify how and where trial counsel was incompetent and the probable different result. *Eagleman v. State*, 2004 ND 6, ¶ 6, 673 N.W.2d 241. Although our standard of review for a

claim of ineffective assistance of counsel is a mixed question of law and fact, the district court's findings of fact are subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Kamara v. State*, 2003 ND 179, ¶ 7, 671 N.W.2d 811.

[¶ 14] The district court ruled Greywind's argument that his trial attorney in the theft case was ineffective for failing to interview Huynh or Berns had "no merit" because those persons were not involved in the theft case. Regarding Greywind's trial attorney in the conspiracy case, the court noted Huynh and Berns were both "important witnesses" and that the attorney indicated he would have interviewed them if the case had been tried, but Greywind "entered pleas a number of weeks prior to the time the conspiracy case would have been tried." Because there was "substantial other evidence" implicating Greywind in the crimes and Greywind admitted to committing the crimes, the court ruled Greywind "failed to prove that counsel fell below an objective standard of reasonableness" or that "the outcome would have been any different."

[¶ 15] If it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, that course should be followed. *Garcia*, 2004 ND 81, ¶ 5, 678 N.W.2d 568. In *Damron*, 2003 ND 102, ¶ 18, 663 N.W.2d 650, the defendant similarly claimed he was denied effective assistance of counsel because "he would not have pled guilty had his attorney adequately investigated the facts or produced more alibi witnesses." We held "[b]ecause Damron pled guilty knowingly and voluntarily, he cannot show in what manner actual prejudice resulted from his trial counsel's failure to investigate more thoroughly or to move to suppress specific evidence." *Id.*

[¶ 16] Likewise, we have concluded the trial court did not err in ruling Greywind

knowingly and voluntarily pled guilty. Therefore, Greywind cannot establish actual prejudice has resulted from his attorney's allegedly deficient performance. We conclude the district court did not err in ruling Greywind was not denied effective assistance of counsel.

C

[¶ 17] Greywind argues the district court erred in failing to grant him a new trial based on newly discovered evidence in the form of recanted statements of Huynh and Berns.

[¶ 18] Under N.D.C.C. § 29–32.1–01(1)(e), post-conviction relief may be granted on the ground that "[e]vidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice." This ground is similar to a request for a new trial based on newly discovered evidence under N.D.R.Crim.P. 33 and requires the same showing to obtain a new trial. *Breding v. State*, 1998 ND 170, ¶ 19, 584 N.W.2d 493. In *State v. Steinbach*, 1998 ND 18, ¶ 22, 575 N.W.2d 193 (citations omitted), we explained:

Under N.D.R.Crim.P. 33(a), the trial court may grant a new trial to the defendant if required in the interests of justice. To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show (1) the evidence was discovered after trial, (2) the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. A motion for new trial based upon newly discovered evidence rests within the discretion of the trial court, and we will not reverse the court's

**396**

denial of the motion unless the court has abused its discretion. If the newly discovered evidence is of such a nature that it is not likely to be believed by the jury or to change the results of the original trial, the court's denial of the new trial motion is not an abuse of discretion.

[¶ 19] Courts look upon recantation with suspicion and disfavor. *See State v. Garcia,* 462 N.W.2d 123, 124 (N.D.1990); *State v. Hegland,* 355 N.W.2d 803, 806 (N.D.1984). The district court appropriately examined the credibility of the recantations of Huynh and Berns. *See State v. Ford,* 377 N.W.2d 125, 127 (N.D.1985); *State v. Pusch,* 79 N.W.2d 295, 296 (N.D. 1956).

[¶ 20] In support of the application for post-conviction relief, Greywind submitted affidavits from Huynh and Berns. Huynh stated "Greywind has been falsely blamed for his role in my case" and "[t]his was due to the State offering me a lesser sentence for my testimony against" him. Berns claimed that during police questioning he "was intoxicated and under the influence of narcotics;" that he "was coerced and prompted by Detective Stoner that if I made statements and/or testified against John Greywind … I would be given a 'light' sentence for my involvement in the crime;" and that the police and assistant State's Attorney "said that I must testify against John Greywind in order to get a deal … even when they knew that my testimony was fabricated." At the evidentiary hearing, Huynh testified that "I was intoxicated, drunk and high, and so I don't remember much about that day," he did not remember implicating Greywind in the conspiracy, and "[i]f I did at the time I was trying to get myself a better deal, push the blame on another person." Berns testified he had been drinking vodka and beer and smoking marijuana on the day of the shooting and could not remember the de-

tails of what he told law enforcement officers:

I was heavily intoxicated and I didn't—that night that everything happened, the shooting, I didn't quite understand what took place and I—I was scared, you know. They—they just—the detective said I was going to get 20 to 25 years, you know, so I wanted to be cooperative and give the police what they wanted, so when things were suggested to me, I would agree with them, you know.

The State introduced a videotape of Huynh and Berns's statements and the testimony of law enforcement officers involved in the arrests. The law enforcement officers testified they did not coerce Huynh and Berns into making false statements and did not believe them to be intoxicated at the time.

[¶ 21] In rejecting Greywind's claim of newly discovered evidence, the district court noted "the police had substantial evidence implicating [Greywind] in the conspiracy case other than the statements of Huynh and Berns," and stated:

In addition, there were the detailed statements of both Berns and Huynh. The fact that Berns and Huynh are now saying that their memory was impaired by alcohol and drugs is not credible when one views the actual videotaped statements. Huynh and Berns may be willing to change their statements now that they have received the benefit of those statements in their sentencing; however, in light of [Greywind's] acknowledgment of guilt in his Rule 11 plea agreement, at the time he pled before the Court, his acknowledgment of the factual basis, and his subsequent acknowledgment of his guilt at the time of his Rule 35 Motion, [Greywind] has failed to prove that Huynh's and Berns' original statements were not accurate, nor has [Greywind] proved that it would

be probable to get an acquittal in the event of a retrial.

[¶ 22] The task of weighing the evidence and judging the credibility of witnesses belongs exclusively to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence. *City of Jamestown v. Tahran,* 2003 ND 35, ¶ 4, 657 N.W.2d 235. The district court's finding that the recantations were not credible is not clearly erroneous, and we conclude the court did not err in rejecting Greywind's claim of newly discovered evidence.

### III

[¶ 23] In view of our disposition of this case, it is unnecessary to address other issues raised. *See Greybull v. State,* 2004 ND 116, ¶ 9, 680 N.W.2d 254. The judgment denying Greywind's application for post-conviction relief is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.