2013 ND 127

**Terry D. RAMSEY, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

No. 20120407.

Supreme Court of North Dakota.

July 18, 2013.

Blake D. Hankey (argued) and Kelsey Lee Gentzkow (appeared), Grand Forks, N.D., for petitioner and appellant.

Jonathan R. Byers, Assistant Attorney General, Bismarck, N.D., for respondent and appellee.

MARING, Justice.

[¶ 1] Terry Ramsey appeals the trial court's order denying his post-conviction relief application. We conclude the trial court did not abuse its discretion in rejecting Ramsey's post-conviction relief application based on newly discovered evidence. We affirm.

I

[¶ 2] In 2003, Terry Ramsey was found guilty of one count of gross sexual imposition for sexually abusing his half-sister's daughter, "Jane," a pseudonym.. Terry Ramsey appealed the judgment of conviction, and we affirmed. *See State v. Ramsey*, 2005 ND 42, ¶ 35, 692 N.W.2d 498.

[¶ 3] In *Ramsey*, this Court set forth the relevant facts underlying Terry Ramsey's criminal conviction:

Terry Ramsey . . . and his brother Neil Ramsey . . . were separated in childhood from their half-sister. The brothers were reunited with their sister and her two daughters in the late 1990's and began to spend time together as a family. In mid-June of 2001, [Jane] . . ., then age 10, and her sister spent a week with [Terry] Ramsey and his brother at the Ramsey family farm in North Dakota. On June 16, the girls returned to their home in Wyoming for a few weeks before joining [Terry] Ramsey and his family at their home in Florida on July 4, 2001.

While in Florida, Ramsey's wife, Valerie Ramsey . . ., discovered [Terry] Ramsey in a locked bathroom with Jane. [Terry] Ramsey was touching Jane's vaginal area while applying a yeast infection medication that she frequently applied to herself without assistance. Valerie [Ramsey] confronted [Terry] Ramsey, and after a brief argument, [Terry] Ramsey left the family home. The next day, Jane told Valerie [Ramsey] that [Terry] Ramsey had touched her breasts and vagina on more than one occasion during the week she spent in North Dakota. Jane said that [Terry] Ramsey explained the touching by claiming he thought Jane was his wife and that he told her if she told anyone she would not be allowed to travel to Florida.

Valerie [Ramsey] then notified Jane's mother, who asked that Valerie [Ramsey] report the situation to the local police. Both the North Dakota and Florida incidents were reported to local authorities in Florida, including a deputy sheriff and a sex crimes investigator. After being advised to do so by officials in Florida, Jane's mother reported the situation to the appropriate authorities in North Dakota. A warrant was issued in North Dakota, and [Terry] Ramsey was arrested.

[Terry] Ramsey signed a written plea agreement causing the cancellation of his initial trial scheduled for March 2003. At the July 14, 2003, sentencing

hearing, however, [Terry] Ramsey refused to plead guilty and the trial was rescheduled for December 2003. [Terry] Ramsey was tried by a jury in December 2003. In addition to Jane's own testimony, the trial court allowed Jane's mother, Jane's aunt, a Florida deputy sheriff, and a Florida sex crimes investigator to testify as to what Jane had told them about [Terry] Ramsey's actions. The jury returned a guilty verdict. 2005 ND 42, ¶¶ 2–5, 692 N.W.2d 498.

[¶ 4]   On August 2, 2011, Terry Ramsey applied for post-conviction relief alleging he was entitled to vacation of his criminal judgment based on newly discovered evidence and ineffective assistance of counsel. Terry Ramsey alleged a letter he received from Jane, in approximately May 2011, recanting her trial testimony was newly discovered evidence entitling him to vacation of his criminal judgment. The letter written by Jane and sent from Terry Ramsey's father's address stated, in relevant part, "I don[']t believe anything happened bad enough for you to go to jail."

[¶ 5]   On June 18, 2012, the trial court held an evidentiary hearing in which Jane and Dr. Stacy Benson, a clinical psychologist, testified. Jane testified she had been coached by her mother and Valerie Ramsey to testify against Terry Ramsey. Jane testified that over time she began to question whether the sexual abuse had occurred and, when she was unable to remember the specific acts of sexual abuse, she was certain Terry Ramsey did not sexually abuse her. She also testified she spoke with her sister and Terry Ramsey's father about the sexual abuse and, after her conversation with Terry Ramsey's father, she decided to write the letter to Terry Ramsey.

[¶ 6]   Dr. Benson testified studies indicate it is uncommon for people to forget a traumatic event, such as sexual abuse. She opined that, if the sexual abuse occurred, it is highly unlikely that Jane has forgotten. However, she also opined in adolescent sexual abuse cases familial pressure plays a role in victim recantation. She opined that familial pressure most often arises when the victim is exposed to family members who do not believe the sexual abuse occurred.

[¶ 7]   The trial court found Terry Ramsey failed to show newly discovered evidence existed and denied his claim for post-conviction relief.

[¶ 8]   On appeal, Terry Ramsey argues the trial court erred in denying his post-conviction relief, alleging he met his burden of proving the existence of newly discovered evidence. On appeal, Terry Ramsey does not raise a claim of ineffective assistance of counsel.

II

[¶ 9]   Post-conviction relief applications are civil in nature and, generally, are governed by the North Dakota Rules of Civil Procedure. *Greywind v. State*, 2004 ND 213, ¶ 5, 689 N.W.2d 390. In a post-conviction relief proceeding, a trial court's findings of fact will not be disturbed unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Greywind*, at ¶ 5. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, is not supported by the evidence, or if, although there is some evidence to support it, this Court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 10]   A post-conviction relief application may be granted if "[e]vidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice." N.D.C.C. § 29–32.1–01(1)(e); *see Greywind*, 2004 ND 213, ¶ 18, 689 N.W.2d 390. We review

post-conviction relief applications based on newly discovered evidence as a motion for a new trial based on newly discovered evidence under N.D.R.Crim.P. 33. *Greywind*, at ¶ 18. The standard for granting a new trial is well-established:

> "Under N.D.R.Crim.P. 33(a), the trial court may grant a new trial to the defendant if required in the interests of justice. To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show (1) the evidence was discovered after trial, (2) the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. A motion for new trial based upon newly discovered evidence rests within the discretion of the trial court, and we will not reverse the court's denial of the motion unless the court has abused its discretion. If the newly discovered evidence is of such a nature that it is not likely to be believed by the jury or to change the results of the original trial, the court's denial of the new trial motion is not an abuse of discretion."

*Id.* (quoting *State v. Steinbach*, 1998 ND 18, ¶ 22, 575 N.W.2d 193). A trial court abuses its discretion if it acts arbitrarily, unreasonably, unconscionably, or when its decision is not the product of a rational mental process leading to a reasoned decision. *Wheeler v. State*, 2008 ND 109, ¶ 15, 750 N.W.2d 446.

### III

■■■ [¶ 11] Terry Ramsey argues the trial court erred in denying his post-conviction relief application because Jane's 2011 recantation of her 2003 trial testimony constitutes newly discovered evidence

requiring vacation of the conviction in the interest of justice.

■■■ [¶ 12] To grant a motion for a new trial or post-conviction relief application based on newly discovered evidence, the trial court "must be satisfied that in all probability a new trial would result in a different verdict." *State v. Hegland*, 355 N.W.2d 803, 805 (N.D.1984). "Recanting testimony is scrutinized with extreme care because courts are mindful of promoting stability and security of verdicts. This policy would be frustrated if verdicts could always be set aside because of recanting witnesses' affidavits." *Id.* at 806; *see also Greywind*, 2004 ND 213, ¶ 19, 689 N.W.2d 390; *State v. Ford*, 377 N.W.2d 125, 127 (N.D.1985). This Court "look[s] upon recantation with suspicion and disfavor." *Greywind*, at ¶ 19 (citing *State v. Garcia*, 462 N.W.2d 123, 124 (N.D.1990); *Hegland*, at 806). When a witness claims to have lied at trial, "the general rule is that a court should not grant a new trial unless the court is reasonably certain that the recantation is genuine." *Hegland*, at 806.

[¶ 13] The Eighth Circuit Court of Appeals noted recantations are viewed with great skepticism, especially " 'in cases of child sexual abuse where recantation is a recurring phenomenon,' particularly 'when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story.' " *United States v. Rouse*, 410 F.3d 1005, 1009 (8th Cir.2005) (quoting *United States v. Provost*, 969 F.2d 617, 621 (8th Cir.1992), *cert. denied*, 506 U.S. 1056, 113 S.Ct. 986, 122 L.Ed.2d 139 (1993)); *see also United States v. Waters*, 194 F.3d 926, 933 (8th Cir.1999) (noting skepticism regarding recantation is highly applicable in child sexual abuse cases); *United States v. Miner*, 131 F.3d 1271, 1273–74 (8th Cir. 1997) (noting recantations are common in child sexual abuse cases); *United States v.*

*George,* 960 F.2d 97, 101 (9th Cir.1992) (holding recantation by a child sexual abuse victim was not credible and insufficient to support a motion for a new trial when the victim was subject to familial influence); *Myatt v. Hannigan,* 910 F.2d 680, 685 n. 2 (10th Cir.1990) (noting recantation in child sexual abuse cases is common-place).

[¶ 14]   Here, at the June 18, 2012, evidentiary hearing, Jane testified she began questioning whether the sexual abuse occurred over the last several years, stating "it kind of went back and forth with me." She testified she spoke with her sister who urged her to speak with their grandfather, Terry Ramsey's father.   After speaking with Terry Ramsey's father, Jane wrote Terry Ramsey the following letter:

> Grandpa gave me your ad[d]ress thing. I have been wanting to talk for years now but never had the guts [un]til now. There is so much I want to tell you but it[']s really really hard.   Umm well so since the court thing finished, mom kept me sheltered for years after that bull, throughout those years I started to forget everything, when I turned 18 my friend took me in.   I told her about everything I did remember I wanted another person[']s thoughts about it that wasn[']t Aunt Val or mom.   And talking to her shed a new light on things for me. I don[']t believe anything happened bad enough for you to go to jail.   I have talked to grandpa about all this.   I was scared to write you[.]   I thought you would hurt me for what happened. Grandpa told me I had nothing to worry about but I wanted to talk to you.   I want to say how sorry I am about everything that has happened to you.   You shouldn[']t be in jail and I hope you can forgive me for this[.]   I wish I could take every thing back and give you back your life.   I just know nothing happened cause I don[']t hate you at all.   I love

you a whole lot[,] you[']re] my uncle!   I had so much fun with you. . . . I[']m using   grandpa[']s]   address   [be]cause mom doesn[']t know I[']m writing you[.] She would be freaking and I[']m not ready to deal with her yet. . . .

Jane further testified she did not remember the sexual abuse and, after thinking things over, talking with her sister and Terry Ramsey's father, and weighing the "pros and cons," she did not believe the sexual abuse occurred.   She testified she was coached by her mother and Valerie Ramsey to testify against Terry Ramsey, although she did not remember how her mother or Valerie Ramsey coached her and neither person was present in North Dakota when the sexual abuse occurred.

[¶ 15]   Dr. Benson testified that forgetting a traumatic sexual abuse event is very uncommon and it is "highly unlikely for [Jane] to forget a traumatic event of this nature."   However, Dr. Benson testified recantation can occur and is more prevalent when a victim is reconnected with family members who do not validate her status as a victim.

[¶ 16]   Terry Ramsey argues the trial court erred in its findings on prongs one, two, and four of the analysis required for the granting of a new trial based on newly discovered evidence.   Terry Ramsey alleges the record does not support the trial court's finding that his failure to discover the letter before the 2003 trial was due to a lack of diligence.

[¶ 17]   In rejecting Terry Ramsey's claim of newly discovered evidence, the trial court stated, "[w]hile this letter was received after trial, the information contained in it was subject to discovery prior to trial and the failure to learn about this evidence was the result of the defendant's lack of diligence."

[¶ 18] The criminal trial occurred in 2003. At the 2003 trial, Terry Ramsey argued that Jane's mother and Valerie Ramsey coached Jane's testimony. It was not until approximately May 2011 that Jane sent Terry Ramsey the letter recanting her testimony. While the trial court is correct in concluding evidence of coaching was discoverable at the time of trial and, in fact, was a theory set forth at trial, the record does not support the finding that the actual letter written by Jane existed prior to trial and could have been discovered through Terry Ramsey's diligence. At oral argument, the State conceded Terry Ramsey met his burden of proving prong one that the letter of recantation was discovered after trial and prong two that the failure to learn about this evidence at the time of trial was not a result of the defendant's lack of diligence. Although the trial court erred in finding the recantation was not evidence discovered after trial and the failure to discover the letter was a result of Terry Ramsey's lack of diligence, Terry Ramsey had the burden of proof on all four prongs of the analysis before he would be entitled to a new trial on newly discovered evidence.

[¶ 19] In regard to prong four, Terry Ramsey argues the trial court erred because it failed to find Jane's testimony lacked credibility and because it found Jane's recantation would likely not result in an acquittal at a new trial.

[¶ 20] The trial court rejected Terry Ramsey's claim of newly discovered evidence stating:

> The court ... *disagrees that the weight and quality of the evidence would likely result in an acquittal.* [Jane's] testimony that she no longer remembers the incidents and therefore they did not happen, when weighed against her testimony at trial that the incidents did occur, does not lead this court to the conclusion that Mr. Ramsey would likely be acquitted. (Emphasis added.)

The trial court relied on the following findings of fact:

> At the post-conviction relief hearing, Mr. Ramsey presented evidence by way of testimony from [Jane], the victim in the underlying criminal matter. [Jane] had testified at the time of trial. She was ten (10) years old at the time of the incidents which led to the charges being filed and age thirteen (13) at the time of trial. Mr. Ramsey also presented a letter from [Jane] postmarked May 4, 2011, addressed to Terry Ramsey. Mr. Ramsey contends that this letter is newly discovered evidence, entitling him to post-conviction relief. Mr. Ramsey's counsel, in a filing dated February 7, 2012, admits that the letter is a "tenuous recantation" of [Jane's] trial testimony. The substance of [Jane's] testimony at the post-conviction relief hearing was that she does not believe the incidents which led to Mr. Ramsey's conviction had ever occurred because she could no longer remember them. Because she no longer remembers the incidents[,] she now believes that none of it happened. This letter was written at a time when [Jane] was living with Mr. Ramsey's father. The letter states that [Jane] does not believe that Mr. Ramsey did anything "bad enough" for Mr. Ramsey to go to jail. The letter does not contain an unequivocal denial that the alleged incidents occurred or that she lied under oath. [Jane] waited until she was over the age of eighteen (18) to write the letter because she did not want her mother to be involved. [Jane] believed that her mother would be vindictive if she learned that [Jane] was attempting to assist Mr. Ramsey. On cross examination of [Jane] by the [S]tate, it was evident to this court that [Jane] does not

remember much about the trial of Mr. Ramsey. She did not remember the prosecutor, Jonathan Byers. She did not remember Gloria Porter, the person in Florida that interviewed her. She does not remember Lynn Stiller (phonetic), who also interviewed her. [Jane] claims that she testified the way she did because she was told what to say by her [A]unt Val, with her mother going along with it. [Jane] does not recall what it was that her [A]unt Val told her to testify about, but knows that Aunt Val put her up to it because "none of it makes sense." The [S]tate offered Exhibit # 1, which was a note authored by [Jane]. [Jane] did not recall writing the note but did recognize the handwriting. Likewise, the [S]tate offered Exhibit # 2, also authored by [Jane]. [Jane] had no memory of writing it. This was a note written by [Jane] to her mother, which read, "I hate Terry and never want to see him again." On redirect examination by Mr. Hankey, [Jane] acknowledged that Aunt Val did not tell her what to say, but rather urged her to testify or others may be hurt.

Mr. Ramsey also presented evidence from Dr. Stacy Benson concerning traumatic memory. The gist of Dr. Benson's testimony was that generally people do not have a problem remembering traumatic events; they have a problem forgetting them. Dr. Benson's testimony was that it is unlikely that [Jane] would have forgotten the prior traumatic events. On cross examination, Dr. Benson acknowledged that familial abuse may not be a traumatic event to a victim. Dr. Benson also agreed that children are less likely to remember events with the passing of time.

The trial court concluded Jane's testimony "[left] the court only with the conclusion that [Jane] no longer recalls many of the incidents" and that Jane did "not claim to have lied at trial" but that "[s]he has simply changed her mind based on her lack of memory of any of the incidents." Therefore, the trial court concluded Jane's recantation to be "tenuous" at best.

[¶ 21] "The task of weighing the evidence and judging the credibility of witnesses belongs exclusively to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *Greywind*, 2004 ND 213, ¶ 22, 689 N.W.2d 390. The common definition of "tenuous" is "thin, slight ... not dense ... having little substance or strength." *Merriam–Webster's Collegiate Dictionary* 1288 (11th ed.2005). Here, the record supports the trial court's findings that Jane's June 18, 2012, testimony was "tenuous," meaning having "little substance or strength," and her recantation testimony would in all probability not result in an acquittal. We conclude the trial court's findings are not clearly erroneous.

[¶ 22] The State argues Terry Ramsey's statements accepting responsibility at his sentencing hearing further prove Jane's recantation would not result in an acquittal at a new trial. Because we conclude the trial court did not err in finding Terry Ramsey failed to prove the weight and quality of the evidence would in all probability result in an acquittal, we conclude Terry Ramsey failed to meet his burden of proving that newly discovered evidence existed entitling him to vacation of his criminal judgment, and the trial court did not abuse its discretion in denying post-conviction relief. *See Hegland*, 355 N.W.2d at 805.

IV

[¶ 23] Terry Ramsey's remaining arguments are either without merit or unnecessary to our decision and need not be addressed. We conclude the trial court did

not abuse its discretion in denying Terry Ramsey's post-conviction relief application on the basis of newly discovered evidence. We affirm the trial court's order denying post-conviction relief.

[¶24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.