2017 ND 246

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Anthony Leon CAMPBELL, Defendant and Appellant**

**No. 20160197**

Supreme Court of North Dakota.

Filed 10/17/2017

Kelly A. Dillon, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, ND, for defendant and appellant.

VandeWalle, Chief Justice.

[¶ 1] Anthony Campbell appealed a criminal judgment after a jury found him guilty of murder. We affirm, concluding the district court did not abuse its discretion in its evidentiary decisions relating to the testimony of Campbell's expert witness and the admission of evidence of prior bad acts.

I

[¶ 2] According to the trial testimony of Minot police officer David Goodman, in the morning hours of September 15, 2014, Shannon Brunelle was found dead inside a garage stall. The autopsy report stated Brunelle had seven lethal stab wounds in his back and neck and had been beaten with a golf club. Goodman testified Campbell was one of the last persons to be seen with Brunelle before he was murdered.

[¶ 3] The Minot police arrested Campbell for the murder of Brunelle. At trial, the State submitted evidence showing Campbell's DNA was found inside a pair of bloody athletic shoes found inside the garage. Campbell's DNA was also found on a broken golf club used to strike Brunelle.

[¶ 4] Campbell testified at trial he had no involvement in Brunelle's murder. Campbell also retained Ross Rolshoven, who was offered and accepted as an expert private investigator to testify at trial and provide his opinions of the case. Rolshoven testified that he believed at least two assailants were present when Brunelle was murdered. Rolshoven also provided his opinions about the State's investigation and a third-party's possible involvement in Brunelle's murder. The district court sustained the State's objections when Rolshoven testified about facts not in evidence. After a seven-day trial, the jury found Campbell guilty of Brunelle's murder.

II

[¶ 5] Campbell argues the district court should have allowed his expert to provide all of his opinions about Brunelle's murder.

[¶ 6] We review a district court's decisions relating to expert witness testimony under an abuse of discretion standard. *Matter of O.H.W.*, 2009 ND 194, ¶ 15, 775 N.W.2d 73. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned decision. *Larson v. Larson*, 2016 ND 76, ¶ 32, 878 N.W.2d 54.

[¶ 7] Rule 702, N.D.R.Ev., allows testimony from expert witnesses:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

[¶ 8] The district court allowed Rolshoven to testify as an expert on private investigations. Rolshoven provided his opinions of the case on the basis of his investigation:

Q Did you attempt to verify any other theories?
A Certainly.
Q Can you explain any of these theories?
A Well, my understanding is that the State's belief is that Anthony Campbell and Shannon Brunelle were alone in the garage and that for some reason Anthony Campbell just went berserk and killed Shannon Brunelle. They have never supplied me with a motive or a reason for it. It just didn't strike me as plausible based on what I saw at the crime

scene photographs. This really seemed to be more of an execution than a random murder. And I've looked at a lot of these and this was not a typical situation.

Q In your opinion were there deficiencies in the State's investigation?

A I don't want to point fingers at the Minot Police Department. They have got their hands so full I wouldn't want to have that burden either. But there is always more things you could have done. They didn't take the cell phone of Candace Knigge that he was on talking to Marissa Posey for two, three, four hours that evening. There was a couple of things from the crime scene. A white bandana that wasn't taken. The hat that Juliana Beeter testified was worn by one of Bryan Davis's friends was not taken into evidence. No DNA tests were taken on that. Yeah, there is certainly things that could have been done.

. . . .

Q Do you have an opinion as to the murder of Shannon Brunelle?

MS. DILLON: Objection. It goes to the province of the jury.

THE COURT: Sustained.

BY MR. GERESZEK: Q In your opinion, by viewing the crime scene photographs and the discovery from the State, how many assailants were present at the time of the murder?

. . . .

THE WITNESS: I believe there was at least two based on the multiple sets of footprints from tennis shoes and boots found within the crime scene.

BY MR. GERESZEK: Q Did injuries have anything to do with that opinion that you based?

A I have seen a lot of murders and looked at the photographs and analyzed them, and this one was extremely vio-

lent. And it really struck me as gang related, drug related.

MS. DILLON: Your Honor, again I am going to object as invading the province of the jury. There is no evidence that there was any gang involvement here.

THE COURT: That portion would be sustained on the objection.

Rolshoven also testified regarding a third person's possible involvement in Brunelle's murder:

Q What is the basis of your opinion that Bryan Davis is not a go-nowhere lead?

A He was a drug trafficker, a human trafficker, was involved in the meth trade, [Brunelle] was a meth user. I think that the two knew each other through that. And [Brunelle's] reputation of being a thief, one could certainly surmise that he had stolen drugs from Mr. Davis and Mr. Davis retaliated in a rather severe and brutal fashion.

[¶ 9] Campbell argues the district court abused its discretion when it did not allow Rolshoven to provide all of his opinions of the case. The court sustained the State's objections after Rolshoven made statements regarding facts not in evidence: (1) that Brunelle's murder may have been gang related, and (2) that there was an attack or attempted attack on Brunelle a few days before his murder. The court also sustained the State's objection that an open-ended question about whether Rolshoven had "an opinion as to the murder of Shannon Brunelle" invaded the province of the jury.

[¶ 10] Here, the district court sustained three objections from the State during Rolshoven's testimony; however, the court did allow Rolshoven to provide his opinions of the case. Rolshoven testified about the Minot police department's investigation of the case. He testified that he believed at least two assailants murdered Brunelle.

He also testified about another person's possible involvement in the murder. We conclude the district court did not abuse its discretion by sustaining the State's objections during Rolshoven's testimony and not allowing him to provide all of his opinions about Brunelle's murder.

### III

[¶ 11] Campbell argues the district court erred by admitting evidence of prior bad acts at trial. In response, the State argues Campbell opened the door to the alleged act in his trial testimony.

[¶ 12] A district court's evidentiary ruling is reviewed under an abuse-of-discretion standard. *State v. Roe*, 2014 ND 104, ¶ 10, 846 N.W.2d 707. Under N.D.R.Ev. 404(b), evidence of prior bad acts or crimes is generally not admissible to show a person's character to prove how that person acted on a particular occasion. *State v. Hernandez*, 2005 ND 214, ¶ 19, 707 N.W.2d 449.

[¶ 13] On the first day of trial, the parties stipulated to the admittance of a Facebook conversation dated September 15, 2014, between Campbell and another individual. The conversation included statements from Campbell that he was between a rock and a hard place, that he was afraid, and that he had screwed up. Campbell testified the statements were made in relation to his decision to return to Minot, going through life struggles, and being accused of burglarizing his ex-girlfriend's home. He also testified he did not know of Brunelle's death at the time of the conversation. In rebuttal, Mindy Weisse, Campbell's ex-girlfriend, testified he stole her cell phone from her home on September 1, 2014.

[¶ 14] At Campbell's request, the district court gave a limiting instruction regarding the alleged burglary:

> Evidence has been introduced of another criminal act alleged to have been committed by the Defendant.

> Such evidence may not be considered by you as proof of the Defendant's character.

> You should give such evidence the weight you feel it deserves.

[¶ 15] The parties stipulated to the admittance of the Facebook conversation. Campbell's ex-girlfriend provided rebuttal testimony about the alleged burglary after Campbell initially testified about being accused of the burglary. *See Hernandez*, 2005 ND 214, ¶ 20, 707 N.W.2d 449 (inadmissible evidence may be admissible when the opposing party opens the door for the admission of that evidence). On this record, we cannot conclude the district court abused its discretion.

### IV

[¶ 16] We have considered Campbell's remaining arguments and conclude they are either without merit or not necessary to our decision. The judgment is affirmed.

[¶ 17] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Jon J. Jensen

Lisa Fair McEvers

I concur in the result.

Daniel J. Crothers