# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2025 ND 152

---

Anthony Leon Campbell,                    Petitioner and Appellant

    v.

State of North Dakota,                    Respondent and Appellee

---

### No. 20250008

---

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Kiara C. Kraus-Parr, Grand Forks, ND, for petitioner and appellant; on brief.

Dillon Dyer, Assistant State's Attorney, Minot, ND, for respondent and appellee; on brief.

**Campbell v. State**
**No. 20250008**

**Jensen, Chief Justice.**

[¶1]   Anthony Campbell appeals from an order denying his application for postconviction relief. Campbell argues he received ineffective assistance of counsel during the underlying criminal proceedings and newly discovered evidence exists warranting reversal of his conviction. We affirm.

I

[¶2]   In 2016, a jury found Campbell guilty of murder. His conviction was affirmed on appeal. *State v. Campbell*, 2017 ND 246, 903 N.W.2d 97.

[¶3]   In November 2017, Campbell filed an application for postconviction relief alleging ineffective assistance of counsel. The district court summarily dismissed the petition. We reversed the summary dismissal and remanded the case for an evidentiary hearing. *Campbell v. State*, 2021 ND 45, 956 N.W.2d 387.

[¶4]   An evidentiary hearing was held on August 29, 30, and September 21, 2023. The district court denied Campbell's application for postconviction relief after finding Campbell failed to prove that he received ineffective assistance of counsel or the existence of newly discovered evidence sufficient to warrant a new trial. Campbell appealed the order. On appeal, Campbell was represented by counsel and filed his own supplemental statement.

II

[¶5]   Our standard of review for district court orders on applications for postconviction relief is well-established:

> The Uniform Postconviction Procedure Act, N.D.C.C. ch. 29-32.1, governs postconviction relief proceedings. The applicant bears the burden of establishing grounds for relief. This Court reviews findings of fact under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is

1

left with a definite and firm conviction a mistake has been made. The Court reviews questions of law de novo.

*Gaddie v. State*, 2024 ND 170, ¶ 8, 11 N.W.3d 21 (cleaned up).

## III

[¶6] Campbell's assertion he received ineffective assistance of counsel includes the following claims regarding his trial counsel or trial procedure: the failure to investigate alternative suspects, the failure to produce and preserve evidence, the failure to contest the State's objection to the defense investigator's testimony regarding his opinion on Campbell's guilt or innocence, allowing the introduction of improper character evidence, allowing Campbell to be seen in visible restraints by jurors, allowing the closure of portions of the trial to the public, instances of juror and prosecutorial misconduct, the failure to request independent forensic testing of items in evidence, the failure to request a lesser included offense, his trial counsel had a conflict of interest, and violation of the attorney-client privilege.

[¶7] Effective assistance of counsel in a criminal proceeding is a constitutional right. *See* U.S. Const. amend. VI; N.D. Const. art. I, § 12; *Damron v. State*, 2003 ND 102, ¶ 6, 663 N.W.2d 650. An applicant for postconviction relief based on ineffective assistance of counsel must satisfy the test from *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984). Under *Strickland's* test, the applicant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Brewer v. State*, 2019 ND 69, ¶ 5, 924 N.W.2d 87 (quoting *Rourke v. State*, 2018 ND 137, ¶ 5, 912 N.W.2d 311). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* ¶ 9 (quoting *Middleton v. State*, 2014 ND 144, ¶ 6, 849 N.W.2d 196).

> Unless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the

2

> context of the remaining evidence properly presented and the overall conduct of the trial.

*Brewer*, ¶ 9 (cleaned up). "Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Samaniego v. State*, 2024 ND 187, ¶ 9, 12 N.W.3d 827 (quoting *Rourke*, ¶ 6). "Conclusory allegations that counsel failed to call certain witnesses without indicating what the testimony would have been, how it might have affected the outcome of the trial, or what prejudice may have resulted from the failure to call them, do not support a claim of ineffective assistance of counsel." *Lindeman v. State*, 2024 ND 228, ¶ 11, 14 N.W.3d 883 (quoting *State v. Schlickenmayer*, 364 N.W.2d 108, 112 (N.D. 1985)); *see also Damron*, ¶ 16 ("A defendant must offer evidence that any additional witnesses would have aided the defense's claim.").

## A

[¶8]   Campbell argues he received ineffective assistance of counsel because his trial counsel failed to investigate a potential suspect, failed to call the potential suspect as a witness, and failed to call the victim's brother who allegedly told law enforcement he believed Campbell was innocent and identified others he suspected were involved. During the hearing on Campbell's application, Campbell testified he was unfamiliar with the potential suspect, but a different witness had informed law enforcement that she learned from another individual that the potential suspect was implicated in the murder. Campbell's trial counsel testified that one possible defense theory involved the potential suspect committing the murder in connection with drugs and money. However, Campbell's trial counsel testified that he received no further information or had any further discussions with Campbell regarding this theory or the decision not to call the potential suspect as a witness. Campbell's trial counsel further testified he did not call the victim's brother as a witness due to concerns over his mental state and because the brother was being held at the North Dakota State Hospital at the time of the trial. Campbell's trial counsel testified repeatedly that he did not know what the victim's brother would say on the stand. The district court found:

No sufficient proof has been provided to support the conclusion that [Campbell's trial counsel] was going to call [potential suspect] but failed to do so. Additionally, [Campbell] has failed to show a reasonable probability of a different outcome when weighed against the evidence in total had [potential suspect] testified. The Jury heard the testimony of [potential suspect's former roommate], pointing the finger at [potential suspect]. If [potential suspect] was a suspect for the crime, he would have no incentive, or obligation, to answer truthfully about his knowledge of the crime and could clearly assert his right against self-incrimination. Counsel's representation was not below a reasonable professional standard when he failed to call [potential suspect] as a witness.

. . . .

[Campbell's trial counsel] acknowledges that he had that intent, at one time in his trial preparation, but after review, and being uncertain of what [victim's brother] would say, [Campbell's trial counsel] made a tactical decision not to call [victim's brother] as a witness.

A reviewing Court should not second-guess tactical or strategic matters. *Noorlun v. State*, 2007 ND 118, [¶ 12], 736 N.W.2d 477. "Strategic choices by [trial] counsel 'made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id*. Courts do not impose their collective judgment upon counsel or apply the distorting effect of hindsight as to matters of strategy. *Id*. In this case, [Campbell's trial counsel's] choice does not fall below an objectively reasonable standard of effective assistance. Further, there is no evidence presented that [victim's brother's] testimony would have brought about a different result.

[¶9]   The district court found that the alternative potential suspect theory was not fully developed and it was unknown what the victim's brother would have testified to if placed on the witness stand. The court also found Campbell failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result would have been different. *See Brewer*, 2019 ND 69, ¶ 5. The court's findings are supported by evidence in the record, the court did not misapply the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's findings were not clearly erroneous.

[¶10] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to require the State to produce and preserve cell phone data. Rule 16(a)(1)(D)(i), N.D.R.Crim.P., allows a defendant to inspect, copy, or photograph evidence in the State's possession, custody, or control if the defendant makes a written request and the evidence is material to preparing the defense.

[¶11] Campbell's trial counsel requested all cell phone records in the State's possession during discovery but did not file any motions to compel the State to produce cell phone records of potential witnesses. Campbell argues the cell phone records from two of the State's witnesses could have established a "precise timeline of events" allowing Campbell to confront and impeach the State's witnesses. Specifically, he argues the cell phone records would have proven one of the two State's witnesses was lying about the time she entered the garage after the victim's death. The district court found the following with respect to the cell phone records: "[Campbell] fails to show how this lack of confrontation of the witness, in regard to the specific time she entered the garage and found the deceased, would support a reasonable doubt as to [Campbell's] guilt."

[¶12] Although the district court addressed the prejudice prong of the *Strickland* test, we note our prior precedent on the underlying issue of whether or not the State has a duty to collect the phone records of the two witnesses as asserted by Campbell. In *State v. Steffes*, 500 N.W.2d 608, 612 (N.D. 1993), this Court rejected a similar Rule 16 argument, stating, "At one end of the evidentiary spectrum is the situation where the state initially fails to collect evidence. Police generally have no duty to collect evidence for the defense." In *State v. Schmidt*, 2012 ND 120, ¶ 9, 817 N.W.2d 332, we rejected an argument that law enforcement had a duty to secure and preserve video evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). We described Schmidt's claim as an assertion that there had been a *Brady* violation because "the State failed to preserve the surveillance video from Dakota Express. He argues the State allowed the video to be destroyed, because the police officer did not take steps to preserve the video before the video

surveillance system recorded over the video." *Schmidt*, ¶ 9. We held that "[u]nder the three categories articulated in *Steffes*, a *Brady* analysis is appropriate only in cases classified under the third category, involving 'the [S]tate's suppression of evidence which has been collected and preserved.'" *Id.* ¶ 13 (quoting *Steffes*, at 612). Although the district court did not address the first prong of the *Strickland* test, we note that the assertion that the State was required to collect the phone records at issue, under the circumstances of this case, is without merit.

[¶13] The record supports the district court's finding that Campbell failed to show a reasonable probability that, but for his trial counsel's failure to gather cell phone records from one of the State's witnesses, the result would have been different, the court did not misapply the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding was not clearly erroneous.

C

[¶14] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to challenge the State's objection to the defense's private investigator providing an opinion on Campbell's guilt or innocence. A trial court has broad discretion in deciding whether to admit or exclude evidence. *State v. Wangstad*, 2018 ND 217, ¶ 6, 917 N.W.2d 515. According to Rule 704, N.D.R.Ev., "[a]n opinion is not objectionable just because it embraces an ultimate issue."

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

N.D.R.Ev. 702.

[¶15] Campbell attempted to solicit an opinion regarding his guilt or innocence from his privately retained investigator. The State objected, arguing that the investigator could not testify regarding his opinion on an ultimate issue because that determination is solely for the jury. The district court sustained the

6

objection. Campbell argues the court abused its discretion in sustaining the objection because it misapplied Rule 704, and his trial counsel should have objected to or challenged the erroneous ruling. Campbell argues he was prejudiced because the jury was unable to consider his investigator's opinion regarding who committed the murder and why, and without the final opinion the investigator's testimony was "disjointed and seemingly cover[ed] irrelevant issues[.]" The court concluded:

> [Campbell] fails, however, to show how the investigator's opinion as to who committed the murder and why would somehow cure the investigator's disjointed, irrelevant, and ineffective performance. [Campbell] further fails to connect this particular in-action by counsel to a reasonable probability of a different outcome when weighed against the evidence in total.

[¶16] The record supports the district court's finding that Campbell failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result would have been different, the court did not misapply the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding was not clearly erroneous.

D

[¶17] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to object to the State's improper introduction of character evidence in violation of N.D.R.Ev. 404(b). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." N.D.R.Ev. 404(b)(1). "The rule recognizes the inherent prejudicial effect prior bad-act evidence may have on the trier of fact and limits the admissibility of that evidence to specifically recognized exceptions." *State v. Shaw*, 2016 ND 171, ¶ 7, 883 N.W.2d 889 (quoting *State v. Aabrekke*, 2011 ND 131, ¶ 8, 800 N.W.2d 284). Under these exceptions, 404(b)(1) evidence may be admitted for reasons other than propensity. *See* N.D.R.Ev. 404(b)(2). "An instruction limiting the jury's use of the evidence is generally sufficient to remove the prejudice and limit the

danger to the defendant." *Coppage v. State*, 2014 ND 42, ¶ 17, 843 N.W.2d 291 (quoting *Coppage v. State*, 2013 ND 10, ¶ 14, 826 N.W.2d 320).

[¶18] On the first day of trial, the parties stipulated to the admission of a September 15, 2014, Facebook conversation between Campbell and another individual. The conversation included Campbell's statements expressing that he felt caught between a rock and a hard place, was afraid, and had screwed up. Campbell testified these remarks concerned his choice to return to Minot, various life difficulties, and allegations of burglarizing his ex-girlfriend's house. In rebuttal, Campbell's former girlfriend testified that he had stolen her cell phone from her residence on September 1, 2014. Witnesses also provided testimony concerning Campbell's drug use. While the district court sustained some objections to this testimony, others were overruled. Despite repeated instances where information about Campbell's drug use and prior bad acts was elicited, no motion for mistrial was asserted.

[¶19] Campbell's trial counsel testified he should have objected to the Facebook conversations under Rule 404(b) rather than stipulating to their admittance. At Campbell's request, the district court gave a limiting instruction regarding the alleged burglary: "[E]vidence has been introduced of other acts alleged to have been committed by [Campbell]. Such evidence may not be considered by you as proof of [Campbell's] character. You should give such evidence the weight as you feel it deserves." Campbell's trial counsel further testified that he made no objections to the drug-use testimony because he opened the door when stipulating to the Facebook conversations. The district court found:

> The admission of error by counsel, a possible mistake in hindsight, does not automatically equate to ineffectiveness of counsel, nor does it automatically overcome the strong presumption of reasonable professional assistance by counsel. Though Counsel admits that he should have objected to rather than stipulated to the contents of the Facebook record, there is no surety that such objections would have been sustained, for example, the evidence may have been allowed in under relevant 404(b) exceptions. Further, even if one may find unreasonableness in counsel's conduct, which I do not, there [Campbell] has failed to show a reasonable

probability that the result of the trial would have been different particularly in light of the weight of the evidence against him.

[¶20] We conclude the district court's finding was not clearly erroneous. Campbell did not argue obvious error, and the asserted error regarding the Rule 404(b) evidence was addressed by the limiting instruction. The court's finding that Campbell failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result would have been different, is supported by the record, was not a misapplication of law, and we are not left with a definite and firm conviction a mistake has been made.

E

[¶21] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to object when the jurors saw him in handcuffs during trial proceedings. In *Deck v. Missouri*, the United States Supreme Court held that the Constitution forbids the routine use of visible shackles during the guilt phase of a criminal trial unless justified by an essential state interest specific to the particular trial. 544 U.S. 622, 629 (2005). This standard applies "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury," but failure to make findings about the court's reason for not accommodating a request for a specific type of restraint is harmless when there is no evidence the jury saw the restraints or the restraints interfered with a defendant's defense. *Id*. at 635; *see also State v. Aguero*, 2010 ND 210, ¶ 13, 791 N.W.2d 1. The district court made the following finding:

> In this case, while such escorting took place daily, there has been no basis shown that [Campbell] was ever seen in visible shackles by any juror. Additionally, no evidence was presented that [Campbell's trial counsel] was made aware of such an observation. Finally, [Campbell] failed to establish that if such an observation had taken place, even without knowledge by [Campbell's trial counsel], that such observation did in fact prejudice the jury.

[¶22] The district court's finding that there was insufficient evidence to substantiate Campbell's claim that the restraints were visible to a juror is supported by the record, was not a misapplication of the law, and we are not left

with a definite and firm conviction a mistake has been made. We conclude the court's finding that Campbell failed to prove the first prong of the *Strickland* test, that his trial counsel's representation fell below an objective standard of reasonableness, was not clearly erroneous.

F

[¶23] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to object to the alleged courtroom closures during the trial without conducting a *Waller* analysis beforehand. *See Waller v. Georgia*, 467 U.S. 39 (1984). Violation of the right to a public trial is a structural error. *State v. Martinez*, 2021 ND 42, ¶ 5, 956 N.W.2d 772.

[¶24] To review a claimed violation of the constitutional right to a public trial, we must first consider whether there was a closure implicating the right. *State v. Morales,* 2019 ND 206, ¶ 16, 932 N.W.2d 106 ("To review a claimed violation of the constitutional right to a public trial, we must first consider whether there was a closure implicating the right.").

[¶25] At Campbell's hearing on his application, he testified that district court proceedings moved to a different courtroom where his mother was not allowed in. He also claims the courtroom was cleared to discuss the Facebook stipulation. However, as the court noted, the trial record is devoid of any order, mention, or announcement that the public was excluded or the courtroom was closed. Campbell's references were to conversations held outside the jury's presence, not excluding the public entirely.

[¶26] We conclude the district court's finding was not clearly erroneous. The court's finding that there was no evidence presented to support the allegation that Campbell did not receive a public trial is supported by the record, was not a misapplication of the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding that Campbell failed to prove the first prong of the *Strickland* test, that his trial counsel's representation fell below an objective standard of reasonableness, was not clearly erroneous.

G

[¶27] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to raise the issue of juror misconduct with the district court after Campbell informed him that he had observed jurors passing notes and witnessed one juror falling asleep.

[¶28] This Court has emphasized the necessity for defendants to show that the alleged ineffective assistance of counsel resulted in prejudice. *Garcia v. State*, 2004 ND 81, ¶ 15, 678 N.W.2d 568; *DeCoteau v. State*, 1998 ND 199, ¶ 6, 586 N.W.2d 156; *Mertz v. State*, 535 N.W.2d 834, 836 (N.D. 1995).

[¶29] The district court found that Campbell failed to meet his burden to establish his claims regarding the passing of notes or other juror misconduct, and the court could not effectively analyze this claim. Other than Campbell's observations testified to at the hearing on his petition, there was no evidence in the trial record that notes were passed or that a juror fell asleep.

[¶30] We conclude the district court's finding was not clearly erroneous. The court's finding that Campbell failed to show that his trial counsel's failure to object to the juror's conduct would have had a reasonable probability of leading to a different result and failed to provide evidence of the alleged juror misconduct is supported by the record, was not a misapplication of the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding that Campbell failed to show that his trial counsel's representation fell below an objective standard of reasonableness and that, but for the alleged error, there is a reasonable probability the result would have been different, was not clearly erroneous.

H

[¶31] Campbell argues he received ineffective assistance of counsel because his trial counsel failed to object or request a mistrial when the State commented during closing arguments that methamphetamine-induced paranoia contributed to the murder, despite the absence of any testimony establishing that Campbell suffered from this condition. He also argues his trial counsel failed to object to

11

alleged improper and false statements by the State that amounted to prosecutorial misconduct.

[¶32] In *State v. Rivet*, we addressed the limitations governing closing arguments:

> The control of closing arguments is largely within the discretion of the trial court, though arguments by counsel must be confined to facts in evidence and the proper inferences that flow therefrom. On appeal, this Court must consider the probable effect a prosecutor's inappropriate comments would have on the jury's ability to judge the evidence fairly. A prosecuting attorney's improper argument may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating. An attorney has a right to argue to the jury the credibility of witnesses as long as he confines that argument to the evidence and fair inferences that arise therefrom.

2008 ND 145, ¶ 4, 752 N.W.2d 611 (cleaned up). Any possible prejudice from the prosecutor's improper comments may be minimized by jury instructions. *Id.* ¶¶ 5, 7. The jury is presumed to have followed the district court's instructions. *State v. Patterson*, 2014 ND 193, ¶ 15, 855 N.W.2d 113.

[¶33] Here, the State did not explicitly say Campbell suffered from paranoia due to methamphetamine use. Instead, considered in the full context of its closing argument, the State urged the jury to remember statements made by a detective. Furthermore, the district court instructed the jury that attorneys' arguments were not evidence and the jury was required to base its verdict on the evidence presented. The district court concluded:

> Jurors are further instructed to disregard statements by counsel which are not supported by evidence presented and which are not in accordance with the law as given by the Court. Additionally, [Campbell's trial counsel] had the opportunity to refute any statements made by State's counsel in his own closing argument. Arguments are made to provide direction and guidance to jurors. This is counsel's interpretation of and direction to the relevant evidence which supports each party's position and case.

> Based on the alleged improper and false statements [Campbell] claims to have been made by the State, any failure by [Campbell's trial counsel] to object to the alleged misconduct of State's counsel in argument to the jury does not rise to the level of unreasonable professional assistance by counsel. Further, nothing is shown to support a finding that but for that failure there would have probably been a different jury result.

[¶34] The district court's finding that Campbell failed to establish the second prong of the *Strickland* test, but for any alleged failure there would have been a reasonable probability of a different result, is supported by the record, was not a misapplication of the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding was not clearly erroneous.

I

[¶35] Campbell argues he received ineffective assistance of counsel because his trial counsel did not request independent forensic testing of a hat, a bandana, a blood spot known as "Blood Item 12," and the victim's fingernails, which showed the presence of DNA belonging to neither the victim nor Campbell. He argues an independent DNA analysis could have been used to impeach the testimony of multiple State witnesses.

[¶36] The district court found that Campbell failed to demonstrate how the impeachment would have occurred or how such hypothetical impeachment would reasonably have changed his trial's outcome, and that Campbell presented nothing to support his conclusory assertions. The court found that Campbell failed to establish that his trial counsel's performance fell below an objective standard of reasonable representation or that additional forensic testing would have produced evidence sufficient to change the result.

[¶37] The district court's finding that Campbell failed to establish the second prong of the *Strickland* test that, but for his trial counsel's alleged error, there is a reasonable probability the result would have been different, is supported by the record, was not a misapplication of the law, and we are not left with a definite

and firm conviction a mistake has been made. We conclude the court's findings are not clearly erroneous.

J

[¶38] Campbell argues he received ineffective assistance of counsel because his trial counsel did not confer with him about whether to submit the lesser included offenses for jury consideration. He claims that once the State argued Campbell used methamphetamine and that his use may have caused methamphetamine-induced paranoia, the lesser included offenses of manslaughter and negligent homicide should have been included in the instructions to the jury.

[¶39] In finding that trial counsel did not fail in his representation of Campbell, the district court cited *State v. Trieb*, 315 N.W.2d 649 (N.D. 1982), where this Court analyzed whether manslaughter was a lesser included offense which should be included within the jury instructions when the defendant is charged with murder and there is potentially self-induced intoxication. In *Trieb*, this Court stated:

> We do not think that this provision authorizes an instruction on "reckless" manslaughter on the sole ground of intoxication evidence. Indeed, as noted above, our statutory definition of "recklessness" precludes a holding that evidence of intoxication *alone* is sufficient to warrant an instruction on "reckless" manslaughter as a lesser included offense of murder.

*Id.* at 658 (emphasis in original).

[¶40] The district court found that consistent with our decision in *Trieb*, a lesser included offense instruction for manslaughter was not appropriate based on the sole allegation of Campbell's possible intoxication. Unlike in *Trieb*, where there was an admission of actus reus, but no mens rea to commit murder, Campbell denied any involvement in the death of the victim. The court's finding that Campbell's trial counsel's representation did not fall below an objective standard of reasonableness because there was no proper basis for the lesser included offense is supported by the record, was not a misapplication of the law, and we

14

are not left with a definite and firm conviction a mistake has been made. We conclude the court's finding was not clearly erroneous.

K

[¶41] Campbell argues he received ineffective assistance of counsel because his trial counsel violated rules relating to conflicts of interest and confidential communications.

[¶42] Campbell argues his trial counsel violated the North Dakota Rules of Professional Conduct by representing him after having represented a witness without a waiver of conflict by the witness nor a disclosure of such representation to Campbell. Rule 1.9(a), N.D.R. Prof. Conduct, prohibits a lawyer from representing a new client in the same or substantially related matter if that representation would be materially adverse to a former client's interests, absent written consent from the former client. Campbell's trial counsel formerly represented a client who was a witness in this case. The prior representation related to criminal charges in the fall of 2014 with the case concluding in November 2014 when the district court revoked the witness's probation. In October 2014, the witness was interviewed by law enforcement about the murder of the victim in this case. In January 2015, Campbell's trial counsel was appointed to represent Campbell. The district court rejected Campbell's argument, concluding:

> The requirement for conflict is that the matter involved in the first representation is the same or substantially related to the matter in the second representation, and that the representation of that second person's interest [is] materially adverse to the interest of the formerly represented person. . . . In this case, there is no basis to find that the matters in each case are the same or substantially related and that [Campbell's] interest [is] materially adverse to the interest of [the witness]. No conflict[s] existed here, thus no ineffective assistance of counsel under this argument.

[¶43] Campbell further argues his trial counsel violated Rule 502(b), N.D.R.Ev., and Rule 1.6(a), N.D.R. Prof. Conduct, by allowing an investigator, the defense's

15

expert, to testify about conversations he had with Campbell and by providing the State with the investigator's report without Campbell's consent.

[¶44] "A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client[.]" N.D.R.Ev. 502(b). Rule 502(b) applies to confidential communication:

> (1) between the client or a representative of the client and the client's lawyer or a representative of the lawyer,
> (2) between the lawyer and a representative of the lawyer,
> (3) by the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,
> (4) between representatives of the client or between the client and a representative of the client, or
> (5) among lawyers and their representatives representing the same client.

Additionally, Rule 1.6(a), N.D.R. Prof. Conduct, prohibits a lawyer from revealing information relating to the representation of the client, unless the client consents to the disclosure, the disclosure is necessary for representation, or the disclosure is specifically required or permitted by law.

[¶45] The district court rejected Campbell's argument, explaining:

> In *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 320 (N.D. 1986), the North Dakota Supreme Court explained:
> > "Experts' reports are communications which may fall within the scope of the privilege. But the experts' observations and conclusions themselves, whether or not contained within a report, and even if based to some extent on communications of the client, are facts which, if relevant, constitute evidence."
> Here, the investigator's expert testimony was allowed because they were facts that were relevant. [Campbell's] statements, as disclosed in the report, were admissions of a party opponent. [Campbell's] testimonial statements given at trial were inconsistent with the statements given in the investigator's report. It is believed that these

16

inconsistent statements may have played a role in the jury verdict of guilt. There is not, however, proof that it was these particular inconsistent statements with which the jury took issue.

[Campbell's] sole decision to give testimony which was inconsistent with previous statements made by [Campbell] does not support a finding that counsel's representation fell below an objective standard of reasonableness. Additionally, there was no violation of attorney-client privilege in counsel's actions.

[¶46] Campbell contends the district court erred when it decided he had not proven ineffective assistance of counsel due to a conflict of interest or a disclosure of confidential communication. The court found Campbell's trial counsel did not have a conflict of interest or violate the attorney-client privilege, and that his trial counsel's representation did not fall below an objective standard of reasonableness. We conclude the court did not err in determining Campbell's trial counsel did not violate the rules relating to conflicts of interest and confidential communications.

IV

[¶47] Campbell argues the district court abused its discretion in determining he failed to present newly discovered evidence in his application for postconviction relief. Postconviction relief is available under N.D.C.C. § 29-32.1-01(1)(e) when "[e]vidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice[.]" "A trial court abuses its discretion if it acts arbitrarily, unreasonably, unconscionably, or when its decision is not the product of a rational mental process leading to a reasoned decision." *Kovalevich v. State*, 2018 ND 184, ¶ 5, 915 N.W.2d 644 (quoting *Ramsey v. State*, 2013 ND 127, ¶ 10, 833 N.W.2d 478).

[¶48] Campbell argues that a blood sample labeled as Blood Item 12 was newly discovered evidence that proves his innocence. In determining Campbell did not present newly discovered evidence, the district court found: Blood Item 12 was known to Campbell at the time of trial; Blood Item 12 was disclosed in discovery; who Blood Item 12 belonged to was never determined; the evidence was not material to the issues at trial; and the weight and quality of the evidence would

17

not likely result in an acquittal. The State also notes Blood Item 12 was introduced at trial, and the blood belonging to someone else was a theme defense counsel used in his closing argument. The court determined that Campbell failed to meet his burden for postconviction relief by demonstrating there was new evidence. We conclude the court did not abuse its discretion in denying Campbell's application for relief based on newly discovered evidence.

V

[¶49] The district court's findings that Campbell failed to establish his various claims of ineffective assistance of counsel were not clearly erroneous and the court did not abuse its discretion in determining that Campbell had failed to establish the existence of newly discovered evidence. The denial of Campbell's requested relief is affirmed.

[¶50] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr